# EXHIBIT 1

| | |
|---|---|
| FLITTER MILZ, P.C.<br>BY:  CARY L. FLITTER<br>IDENTIFICATION NO. 35047<br>BY: ANDREW M. MILZ<br>IDENTIFICATION NO. 207715<br>BY: JODY THOMAS LÓPEZ-JACOBS<br>IDENTIFICATION NO. 320522<br>450 North Narberth Avenue, Suite 101<br>Narberth, PA  19072<br>(610) 822-0782 | ATTORNEYS FOR PLAINTIFFS,<br>individually and on behalf of all others<br>similarly situated<br><br><br>MAJOR NON-JURY CASE |
| GARY NELSON,<br>KAYLEIGH POTTER,<br>individually and on behalf of all others<br>similarly situated,<br>                                        Plaintiffs<br><br>                 vs.<br>BANK OF AMERICA,<br>NATIONAL ASSOCIATION,<br>                                        Defendant. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>            TERM, 2022<br><br>NO.<br>CLASS ACTION |

## CLASS COMPLAINT

**I.      INTRODUCTION**

1. This is a consumer class action brought against an auto lender to redress systemic violations of Pennsylvania's Uniform Commercial Code ("UCC"), 13 Pa C.S. § 9601, et seq.  The UCC requires secured parties who utilize self-help repossession to provide consumers with proper notice when repossessing and reselling a financed vehicle.

2. Defendant, Bank of America, National Association ("Bank"), regularly finances the purchase of automobiles for consumer use in Pennsylvania.  When the Bank believes that a consumer has defaulted on a secured vehicle finance agreement, it repossesses and then makes preparations to auction the vehicle.  In the course of so doing, the Bank failed to provide Plaintiffs and the class with the proper notice of repossession and disposition of collateral required by Pennsylvania Law, including Pennsylvania's Uniform Commercial Code ("UCC").

3. Because self-help repossession is effected without judicial authorization or oversight, the UCC requires secured creditors like the Bank to adhere strictly to the Code's notice requirements.

4. Failure to provide proper notice of repossession of consumer goods is a violation of the Code that yields statutory minimum damages without evidence of harm for the Plaintiffs and the class they seek to represent.

## II. PARTIES/VENUE

5. Plaintiff Gary Nelson ("Nelson"), is a consumer and an adult individual who resides in Reading, PA.

6. Plaintiff Kayleigh Potter ("Potter"), is a consumer and an adult individual who resides in Pittsburgh, PA.

7. Defendant Bank of America, National Association ("Bank") is a foreign corporation with an office for the regular transaction of business at 1600 JFK Blvd, Philadelphia, PA 19103.

8. The Bank is licensed by the Pennsylvania Department of Banking and Securities as a Sales Finance Company.

9. The Bank, as a sales finance company, finances the purchase of automobiles in Pennsylvania.

10. The Bank regularly enters into or takes assignment of motor vehicle installment sale contracts with borrowers in Philadelphia and elsewhere in the Commonwealth.

## III. STATEMENT OF CLAIM

### *Mr. Nelson's Experience*

11. On or about February 24, 2016, Mr. Nelson financed the purchase of a used 2013

2

Case ID: 220902864

Ford Explorer pursuant to a Retail Installment Sale Contract ("RISC"). (Ex. A, Retail Installment Sale Contract.)

12. The Bank financed the transaction and took a security interest in the vehicle.

13. Under the Nelson RISC, the Bank was the secured party to which monthly payments were required to be made.

14. In or about May 2021, the Bank declared a default.

15. In or about May 2021, the Bank, as the secured party, repossessed Mr. Nelson's automobile or ordered that it be repossessed.

16. Pennsylvania law requires immediate post-repossession notice to the borrower advising of the repossession and stating, among other things, how many days to act before the sale of the vehicle, whether the vehicle will be sold by public or private sale, whether the debtor may be liable for a deficiency or entitled to a surplus, and other information. The Notice must be delivered in person to the borrower, or sent via registered or certified mail. 12 Pa.C.S. § 6254.

17. On or about May 13, 2021, after the repossession, the Bank prepared a Notice of Plan to Sell Property directed toward Nelson. ("Notice"). On May 14, 2021, the day after the date on the Notice, the Bank mailed the Notice to Nelson via certified mail.

18. Pennsylvania law requires that secured parties like the Bank provide the borrower the right to redeem the vehicle for fifteen days from the date of mailing of the Notice. The Notice must inform the borrower of this right. 12 Pa.C.S. § 6254(3) provides that "[t]he notice of repossession shall contain the following . . . (3) Notice to the buyer of the holder's intent to resell the motor vehicle at the expiration of 15 days from the date of mailing the notice." This statute is to read *in pari materia* with the Pennsylvania UCC on the issue of repossession of a motor vehicle.

Case ID: 220902864

19. The Notice misstates and understates the amount of time the borrower has to redeem.

20. Specifically, the date of mailing the Notice is May 14, 2021, so the fifteenth and final day for the borrower to redeem would fall on May 29, 2021. By statute, the repossessed vehicle may not be sold or auctioned by the Bank before May 29, 2021.

21. However, the Notice provides, "We will sell the 2013, FORD, EXPLORER at private sale sometime after May 27, 2021." This is 13 days from the date of mailing the Notice.

22. The Bank, as secured party, sent template forms of Notice to consumers across Pennsylvania providing an inadequate and commercially unreasonable period of time to act to redeem their motor vehicle, i.e., less than 15 days to act.

### Ms. Potter's Experience

23. On or about March 8, 2017, Ms. Potter financed the purchase of a 2017 Chevrolet Impala pursuant to a Retail Installment Sale Contract ("RISC"). (Ex. B, Retail Installment Sale Contract.)

24. The Bank financed the transaction, took an assignment of the contract rights, and took a security interest in the vehicle.

25. Under the Potter RISC, the Bank was the secured party to which monthly payments were required to be made.

26. In or about September 2021, the Bank declared a default.

27. In or about September 2021, the Bank, as the secured party, repossessed Ms. Potter's automobile or ordered that it be repossessed.

Case ID: 220902864

28. On or about September 29, 2021, the Bank issued and mailed to Ms. Potter a Notice of Plan to Sell Property ("Notice"). The Notice states that the Bank will sell the vehicle at a sale sometime after October 13, 2021. This is 14 days from the date of mailing the notice.

29. The Potter Notice suffers from the same defects as the Nelson Notice in that it misstates and understates the statutory time in which the borrower has to redeem.

30. The Bank, as secured party, sent a template form Notice to consumers across Pennsylvania.

### *Governing Law*

31. Article 9 of the Uniform Commercial Code ("UCC"), 13 Pa. C.S. § 9601, et seq., governs the repossession of vehicles in Pennsylvania.

32. Under the UCC, 13 Pa. C.S. § 9610, "[E]very aspect of a disposition of collateral … must be commercially reasonable[.]" This requirement includes post-repossession notice.

33. Under the UCC, 13 Pa. C.S. § 9611, the Bank was required to provide "reasonable authenticated notification of disposition" and repossession of the collateral.

34. In sending the Notices described above, the Bank failed to provide adequate and reasonable notification of repossession and disposition of collateral to Plaintiffs and the putative class of borrowers.

35. In the course of the repossession and disposition process, the Bank did not act in a commercially reasonable manner toward Plaintiffs and the putative class of borrowers, and did not provide required or adequate notice of repossession.

36. 13 Pa. C.S. § 9625(c)(2) provides for damages for a secured party's failure to follow the proper procedures upon repossession. The statute allows a consumer debtor such as Plaintiff

(and the putative class) to recover minimum damages of not less than the credit service charge plus 10% of the principal amount of the obligation without evidence of harm.

37. The statutory damages are derived from a simple, straightforward and uniform arithmetic calculation.

38. The two figures needed for the statutory damage calculation are plainly visible on and determinable from the face of the consumer's Retail Installment Sale Contract.

## IV. CLASS ALLEGATIONS

39. Plaintiff brings this action on his own behalf and on behalf of a class pursuant to Rules 1701-1717 of the Pennsylvania Rules of Civil Procedure.

40. Plaintiff proposes to define the "Class" as All Persons:

   (a) who financed the purchase of a motor vehicle for consumer use through the Bank, or who financed the purchase through another entity but such finance agreement was thereafter assigned to the Bank;

   (b) from whom the Bank, as secured party, repossessed the vehicle or ordered it repossessed;

   (c) who had a Pennsylvania address as of the date of repossession;

   (d) in the period commencing six years prior to the date of filing of the Complaint through the date of class certification.

41. On information and belief, there are many members in the Class, making the Class so numerous that joinder of all members is impractical. This matter involves form notices sent out to Pennsylvania consumers in Philadelphia County and elsewhere.

42. There are questions of law or fact common to the Class. These include:

   (a) Whether Plaintiffs and the Class financed the purchase of a motor vehicle for consumer use through the Bank, or who financed the purchase through

6

<div style="margin-left: 2em;">

another entity but such finance agreement was thereafter assigned to the Bank;

(b) Whether Plaintiffs and the Class pledged their motor vehicle as collateral in the finance agreement;

(c) Whether the Bank repossessed the vehicle or ordered it repossessed;

(d) Whether the Bank failed to send the notice of repossession and disposition of collateral ("Notice") required under Pennsylvania law after repossessing a vehicle.

(e) The uniform statutory damages provided for failure to send the post-repossession Notice required under the law;

</div>

43. The claims of Plaintiffs are typical of those of the Class. All are based on the same factual and legal theories. All class members financed the purchase of a motor vehicle for consumer use through the Bank, or financed the purchase through another entity but such finance agreement was thereafter assigned to the Bank. All class members pledged their vehicle as collateral. The Bank declared a default on all. All class members either were sent inadequate form Notice, or were sent no notice at all.

44. Plaintiffs will fairly and adequately protect the interest of the Class. Plaintiffs have no interest antagonistic to those of the Class.

45. Plaintiffs' counsel is competent and experienced in consumer class actions in general and in UCC and repossession class actions specifically.

46. The Bank has acted on grounds generally applicable to the Class, thereby making final relief appropriate with respect to the class as a whole.

47. The questions of law and fact common to the Class predominate over any questions affecting only individual members.

48. The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications.

Case ID: 220902864

49. This class action provides a fair and efficient method for adjudication of the controversy.

50. The class members are consumer debtors who may be unable to locate or afford to hire lawyers, particularly in light of the modest size of any individual recovery.

51. The size of the class and any trial would be readily manageable.

## COUNT I
## UNIFORM COMMERCIAL CODE

52. Plaintiff repeats the allegations set forth above as if the same were here set forth at length herein.

53. Defendant Bank violated Pennsylvania's Uniform Commercial Code by failing to provide proper notice of repossession and disposition of collateral (i.e. Notice) as set forth above.

54. Defendant Bank failed to act in a commercially reasonable manner by failing to provide a proper timely Notice, 13 Pa. C.S. §§ 9610, 9611–9614.

**WHEREFORE,** Plaintiffs Gary Nelson and Kaleigh Potter pray that this Court certify the Class and enter judgment for Plaintiffs and the class members:

(a) Awarding statutory damages to Plaintiffs and the class as provided by the UCC, 13 Pa. C.S. § 9625(c);

(b) For interest and costs; and,

(c) Granting such other and further relief as may be deemed just and proper.

Respectfully submitted:

Date: 9/28/2022

*/s/ Cary L. Flitter*
CARY L. FLITTER
ANDREW M. MILZ
JODY THOMAS LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072

8

Case ID: 220902864

(610) 822-0782

**Attorneys for Plaintiffs and the Class**

9

Case ID: 220902864

## **VERIFICATION**

I, GARY NELSON, do hereby state that the statements contained in the Class Action Complaint are true and correct to the best of my knowledge, information, and belief. I make this statement with the knowledge that the statements contained herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

DATE: Sep 27, 2022

*Gary Nelson* (Sep 27, 2022 10:54 EDT)
GARY NELSON

## **VERIFICATION**

I, KAYLEIGH POTTER, do hereby state that the statements contained in the Class Action Complaint are true and correct to the best of my knowledge, information, and belief. I make this statement with the knowledge that the statements contained herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

DATE: Sep 27, 2022

Kayleigh potter (Sep 27, 2022 14:33 EDT)
KAYLEIGH POTTER

Case 5:22-cv-00430-JSD Document 1-1 Filed 10/4/23 Page 13 of 18

# EXHIBIT "A"

Case ID: 220902864

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

ORAL 25515
STK SP7324

Dealer Number _____  Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| GARY MICHAEL DELSON JR 3500 RAYMOND ST READING PA 19605 BERKS | N/A | KELLY BUICK 901-25 ... EMMAUS, PA 8049 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2014 | BUICK | | REDACTED | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 3050.00 is |
|---|---|---|---|---|
| 6.79 % | $ 5412.41 | $ 24570.55 | $ ... | $ 31082.96 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly beginning |
|---|---|---|
| 72 | 416.43 | 03/... |

Or As Follows: N/A

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. Cash Price
   - Vehicle: $ 23990.00
   - Accessories and Installation: $ 1760.00
   - Government Taxes: N/A
   - Vehicle Delivery: N/A
   - to N/A for N/A: N/A
   - to N/A for N/A: N/A
   - to N/A for N/A: N/A
   - to N/A for N/A: N/A
   - to N/A for N/A: N/A
   - $ 25750.42 (1)

2. Total Downpayment =
   - Trade-In (Year) 2003 CHEV (Make) IMPALA (Model)
   - Trade-In REDACTED (VIN)
   - Gross Trade-In Allowance: $ 1950.00
   - Less Pay Off Made By Seller: $ ...
   - Equals Net Trade In: $ ...
   - + Cash: $ ...
   - + Other N/A
   - (If total downpayment is negative, enter "0" and see 4H below)
   - $ 3050.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) $ ... (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   - A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies
     - Life: N/A
     - Disability: Term N/A $ N/A
   - B. Other Optional Insurance Paid to Insurance Company or Companies
     - (Describe) N/A Term N/A $ N/A
     - (Describe) N/A Term N/A $ N/A
   - C. Official Fees Paid to Government Agencies
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
   - D. Optional Gap Contract: $ N/A
   - E. Government Taxes Not Included in Cash Price: $ N/A
   - F. Government License and/or Registration Fees
     - REG/LIC FEES $ 60.15
   - G. Government Certificate of Title Fees
     - (Includes $ 24.00 security interest recording fee) $ 75.00
   - H. Other Charges (Seller must identify who is paid and describe purpose)
     - to N/A for N/A $ N/A
     - to KELLY BUICK for DOCUMENTATION FEE $ 195.00
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
   - Total Other Charges and Amounts Paid to Others on Your Behalf $ ...

5. Amount Financed (3 + 4) $ 2170.15 (4)
6. Finance Charge $ 24570.55 (5)
7. Total of Payments-Time Balance (5 + 6) $ 5412.41 (6) $ 29982.96 (7)

### Insurance

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

Optional Credit Insurance
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name N/A
Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under the contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

**Other Optional Insurance**
☐ N/A
Type of Insurance: N/A   Term: N/A
Premium $ N/A
Description of Coverage N/A
Insurance Company Name N/A
Home Office Address N/A

☐ N/A
Type of Insurance: N/A   Term: N/A
Premium $ N/A
Description of Coverage N/A
Insurance Company Name N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X _____ Date _____
  Buyer Signature

X _____ Date _____
  Co-Buyer Signature

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**Returned Check Charge:** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be a factor in the credit approval process. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X N/A

**If you do not meet your contract obligations, you may lose the vehicle.**

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before __N/A__, Year __N/A__. SELLER'S INITIALS ____

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X ____ Co-Buyer Signs X ____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See back for other important agreements.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

**NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**

Buyer Signs X _____ Date _____ Co-Buyer Signs X __N/A__ Date _____

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date _____ Co-Buyer Signs X __N/A__ Date _____

**Co-Buyers and Other Owners** — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____

Seller Signs KELLY BUICK ____ Date ____ Address ____ By X ____

Seller assigns its interest in this contract to BANK OF AMERICA, N.A. ____ Title ____
☐ Assigned with recourse ☑ Assigned without recourse ☐ Assigned with limited recourse
(Assignee) under the terms of Seller's agreement(s) with Assignee.

Seller KELLY BUICK By ____ Title ____

FORM NO. 553-PA (REV 1/14) U.S. PATENT NO. D400,792

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe in this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      • You do not pay any payment on time;
      • You give false or misleading information on a credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.
      If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.
      If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.
   h. **Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement:** You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).

4. **WARRANTIES SELLER DISCLAIMS**
   The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.
   Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **RIGHT TO RECEIVE STATEMENT OF ACCOUNT**
   Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

8. **ADDITIONAL RIGHTS**
   If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

9. **APPLICABLE LAW**
   Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Form No. 553-PA 12/14

Case ID: 220902864

# EXHIBIT "B"

Case 5:22-cv-00430-JSD Document 1-1 Filed 11/04/23 Page 16 of 18

Case ID: 220902864

# PENNSYLVANIA INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE

DEAL 403861
STK 7141

Dealer Number _____  Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| KAYLEIGH MICHELLE POTTER<br>108 DOVER LN<br>WEST MIFFLIN PA 15122<br>ALLEGHENY | N/A<br>N/A<br>N/A<br>N/A | CENTURY III CHEVROLET, INC.<br>2430 LEBANON CHURCH ROAD<br>WEST MIFFLIN, PA<br>15122 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2017 | CHEVROLET IMPALA | 6 | REDACTED | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural ☐ N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 11547.00 is |
|---|---|---|---|---|
| 6.59 % | $ 8677.10 | $ 38418.40 | $ 47095.50 | $ 58642.50 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | 627.94 | Monthly beginning 04/22/2017 |
| N/A | | |

Or As Follows: N/A

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ _____ N/A
Credit Disability $ _____ N/A
Insurance Company Name __N/A__
N/A
Home Office Address __N/A__
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

## ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

**1 Cash Price**
Vehicle $ 42586.67
Accessories and Installation $ N/A
Government Taxes $ 2692.18
Vehicle Delivery $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
$ 45278.85 (1)

**2 Total Downpayment =**
Trade-In 2002 CHEV TBLAZ
Trade-In REDACTED (Model) (VIN)
Gross Trade-In Allowance $ 500.00
Less Pay Off Made By Seller $ N/A
Equals Net Trade In $ 500.00
+ Cash $ 3000.00
+ Oth REBATES $ 8047.00
(If total downpayment is negative, enter "0" and see 4H below)

**3** Unpaid Balance of Cash Price (1 minus 2) $ 11547.00 (2)
$ 33731.85 (3)

**4** Other Charges Including Amounts Paid to Others on Your Behalf
A Cost of Optional Credit Insurance Paid to Insurance Company or Companies
Life Term s N/A
Disability Term s N/A $ N/A
B Other Optional Insurance Paid to Insurance Company or Companies
(Describe) N/A Term N/A $ N/A
(Describe) N/A Term N/A $ N/A
C Official Fees Paid to Government Agencies
to STATE OF PA for TIRE TAX $ 5.00
to N/A for N/A $ N/A
to N/A for N/A $ N/A
D Optional Gap Contract $ 850.00
E Government Taxes Not Included in Cash Price $ N/A
F Government License and/or Registration Fees
REG/LIC FEES $ 9.00
G Government Certificate of Title Fees
(includes $ 24.00 security interest recording fee) $ 75.00
H Other Charges (Seller must identify who is paid and describe purpose)
to N/A for Prior Credit or Lease Balance $ N/A
to CENTURY III CHEVR for Documentation Fee $ 138.00
to PROTECTIVE for SERV. CONTRACT $ 3570.00
to N/A for N/A $ N/A
to CENTURY III CHEVR for Online Registrati $ 39.55
to N/A for N/A $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
to N/A for N/A $ N/A
Total Other Charges and Amounts Paid to Others on Your Behalf $ 4686.55 (4)

**5** Amount Financed (3 + 4) $ 38418.40 (5)
**6** Finance Charge $ 8677.10 (6)
**7** Total of Payments-Time Balance (5 + 6) $ 47095.50 (7)

**Other Optional Insurance**
☐ N/A N/A
Type of Insurance Term
Premium $ N/A
Description of Coverage N/A
N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A
☐ N/A N/A
Type of Insurance Term
Premium $ N/A
Description of Coverage N/A
N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X N/A N/A
Buyer Signature Date

X N/A N/A
Co-Buyer Signature Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**Returned Check Charge:** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 75 Mo PROTECTIVE
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs [signature]

---

If you do not meet your contract obligations, you may lose the vehicle.

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before ___N/A___ Year N/A . SELLER'S INITIALS _____

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X [signature] Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See back for other important agreements.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**

Buyer Signs X [signature] Date 03/08/17 Co-Buyer Signs X N/A Date _____

You agree to the terms of this contract. You confirm that before you signed it, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X [signature] Date 03/08/17 Co-Buyer Signs X N/A Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X _____ Address _____
Seller Signs CENTURY III CHEVROLET, INC. Date 03/08/17 By [signature] Title BUS MGR

Seller assigns its interest in this contract to BANK OF AMERICA (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse XX Assigned without recourse ☐ Assigned with limited recourse

Seller CENTURY III CHEVROLET, INC. By [signature] Title BUS MGR.

ILAW FORM NO. 553-PA (REV. 12/16)

ORIGINAL LIENHOLDER

Case ID: 220902864

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods put on it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      - You do not pay any payment on time;
      - You give false or misleading information on a credit application;
      - You start a proceeding in bankruptcy or one is started against you or your property; or
      - You break any agreements in this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.
      If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.
      If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.
   h. **Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement:** You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).

4. **WARRANTIES SELLER DISCLAIMS**
   The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.
   **Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **RIGHT TO RECEIVE STATEMENT OF ACCOUNT**
   Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

8. **ADDITIONAL RIGHTS**
   If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

9. **APPLICABLE LAW**
   Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Case ID: 220902864