## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY NELSON and KAYLEIGH POTTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>Defendant. | Civil Action No. 5:23-cv-00255-JS |

## DEFENDANT BANK OF AMERICA'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND TO STATE COURT

# TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION ................................................................................1

II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND ....................................2

III.    LEGAL STANDARD.............................................................................4

IV.     ARGUMENT ......................................................................................6

        A.    BANA Properly Relied on the Complaint and Plaintiffs' Allegations to
              Establish Class Size and Amount in Controversy.......................................6

        B.    Plaintiffs' Attempts at Forum Shopping and Forcing BANA to Admit
              Liability Should Not Be Countenanced ...............................................11

        C.    Article III Standing Exists, and Plaintiffs Cannot Disclaim Actual Damages
              to Avoid Federal Jurisdiction on Behalf of a Class ................................12

V.      CONCLUSION...................................................................................15

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amoche v. Guar. Trust Life Ins. Co.*,
   556 F.3d 41 (1st Cir. 2009)............................................................................8

*Back Doctors Ltd. v. Metropolitan Property & Cas. Ins. Co.*,
   637 F.3d 827 (7th Cir. 2011) .................................................................14, 15

*Beneficial Consumer Discount Co. v. Savoy*,
   436 A.2d 687 (Pa. Super. Ct. 1981).............................................................15

*Callery v. HOP Energy, LLC*,
   No. CV 20-3652, 2022 WL 3213828 (E.D. Pa. Aug. 9, 2022).....................12

*Caufield v. EMC Mortgage Corp.*,
   803 F. Supp. 2d 519 (S.D. W. Va. 2011)......................................................10

*Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*,
   768 F.3d 425 (5th Cir. 2014) .........................................................................5

*Chrysler Credit Corp. v. B.J.M., Jr., Inc.*,
   834 F. Supp. 813 (E.D. Pa. 1993) ................................................................15

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014).....................................................................................4, 5

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007)........................................................................4, 9

*Hudson v. Eaglemark Savings Bank*,
   475 F. App'x 423 (3d Cir. 2012) ..................................................................13

*In re Burlington N. Santa Fe Ry. Co.*,
   606 F.3d 379 (7th Cir. 2010) .........................................................................5

*In Touch Concepts, Inc. v. Cellco P'ship*,
   788 F.3d 98 (2d Cir. 2015).............................................................................5

*James v. Santander Consumer USA, Inc.*,
   No. CIV. JFM-15-654, 2015 WL 4770924 (D. Md. Aug. 12, 2015) ............9

*Judon v. Travelers Prop. Cas. Co. of Am.*,
   773 F.3d 495 (3d Cir. 2014)...........................................................................6

*Kelly v. Santander Consumer USA Inc.*,
No. CV 20-3698, 2021 WL 518434 (E.D. Pa. Feb. 10, 2021)..................................12

*Langer v. Capital One Auto Finance*,
No. 16-6130, 2019 WL 296620 (E.D. Pa. Jan. 23, 2019)..................................13, 15

*Lewis v. Ford Motor Co.*,
610 F. Supp. 2d 476 (W.D. Pa. 2009).............................................................7, 8, 9

*McCraw v. Lyons*,
863 F. Supp. 430 (W.D. Ky. 1994)........................................................................7

*Napoli v. HSBC Mortg. Servs. Inc.*,
No. 12-CV-222 RMB-AMD, 2012 WL 3715936 (D.N.J. Aug. 27, 2012)..............9

*Robinson v. Holiday Universal, Inc.*,
No. Civ.A. 05-5726, 2006 WL 470592 (E.D. Pa. Feb. 23, 2006) ...........................5

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007)..............................................................................................5

*Scott v. Cricket Commc'ns, LLC*,
No. CV GLR-15-3330, 2016 WL 4415047 (D. Md. Aug. 19, 2016),
*vacated and remanded*, 865 F.3d 189 (4th Cir. 2017) ......................................9, 10

*Scott v. Cricket Commc'ns, LLC*,
865 F.3d 189 (4th Cir. 2017) ...............................................................................10

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)..............................................................................................13

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)...................................................................................13, 14, 15

*Strawn v. AT & T Mobility LLC*,
530 F.3d 293 (4th Cir. 2008) ................................................................................8

*Winkworth v. Spectrum Brands, Inc.*,
No. CV 19-1011, 2019 WL 5310121 (W.D. Pa. Oct. 21, 2019) ...........................14

*Wright Transp., Inc. v. Pilot Corp.*,
841 F.3d 1266 (11th Cir. 2016) .............................................................................5

*Zarichny v. Complete Payment Recovery Servs.*,
80 F. Supp. 3d 610 (E.D. Pa. 2015) ......................................................................11

**STATUTES**

28 U.S.C. § 1332(d)(2)(A) ..................................................................................................4

28 U.S.C. § 1332(d)(11)(B)(i) ...........................................................................................4

28 U.S.C. § 1441(a) ...........................................................................................................4

28 U.S.C. § 1447(c) ...........................................................................................................4

**OTHER AUTHORITIES**

1 Newberg on Class Actions § 3:6 (5th ed. Dec. 2021).....................................................11

Class Action Fairness Act of 2005, PL 109-2, Feb. 18, 2005, 119 Stat 4 ........................6

Parasharami & Ranlett, *Removing the 'Fail-Safe' Class Action Under CAFA*,
    31 No. 4 CLASS ACTION REPORTS ART 2 (2010) ..................................................11

S. Rep. No. 109–14 (2005), 2005 U.S.C.C.A.N. 3 ........................................................5, 6

Defendant Bank of America, N.A. ("BANA") submits this Opposition to Plaintiffs' Motion to Remand to State Court (Dkt. 13) (the "Motion").

## I.    INTRODUCTION

Plaintiffs' Motion to Remand is nothing more than an attempt by Plaintiffs to force BANA to abandon all defenses to class certification and admit liability, or alternatively stay in state court defending a putative class action seeking millions of dollars in damages that belongs in this federal court.  BANA timely and properly removed this action to federal court under the Class Action Fairness Act ("CAFA") using data of Pennsylvania consumers who, according to Plaintiffs, received a uniform, noncompliant notice of repossession from BANA in violation of state law. Plaintiffs' Motion to Remand argues that BANA provided the Court with overinclusive data that fails to track the class as defined by the Complaint; yet, BANA relies, as it is entitled to, on Plaintiffs' own allegations that BANA's conduct was uniform as to all Pennsylvania consumers. BANA is not required to research and prove Plaintiffs' purported damages or admit liability to remove—particularly where Plaintiffs ultimately bear the burden of establishing class certification is warranted.  Moreover, Plaintiffs' arguments are unfounded—and in fact undermined by controlling law in this Circuit—because even if BANA's data does not precisely follow Plaintiffs' class definition, that is not required for removal.  Indeed, BANA need only establish it is more likely than not that at least 100 class members will recover the minimum required amount in controversy.  The data confirms that BANA has overcome at least that hurdle.

The Court should also reject Plaintiffs' contention that they have suffered no injury in fact, while simultaneously seeking almost $15 million in damages.  In making this contradictory argument, Plaintiffs ignore on-point case law from this very Court holding that the UCC claims at issue in this case establish an injury in fact to satisfy standing under Article III—something that

Plaintiffs are not permitted to disclaim on behalf of the putative class as an attempt to remain in state court.  Plaintiffs' gamesmanship should be disregarded.  There is a strong presumption in favor of keeping class actions of this kind in federal court; indeed, CAFA was enacted precisely to prevent plaintiffs from pleading around jurisdiction, as Plaintiffs seek to do here.

For these reasons, the Motion to Remand should be denied, and the parties should proceed with the briefing on BANA's Motion to Dismiss filed prior to Plaintiff's request for remand.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On September 28, 2022, Plaintiffs filed a nearly identical complaint in the Court of Common Pleas of Philadelphia County (the "Prior Action"), which BANA timely removed on November 4, 2022 under CAFA.  *See Nelson v. Bank of America, N.A.*, No. 22-cv-04440 at ECF 1. Plaintiffs did not move to remand, but instead voluntarily dismissed the action after BANA filed a motion to dismiss and refiled the instant Complaint on December 23, 2022 in the same state court, narrowing their class definition and disclaiming actual damages.  *See* Dkt. 1.  BANA timely removed again on January 20, 2023 under CAFA and subsequently filed a Motion to Dismiss— stating the same arguments as in its motion to dismiss the Prior Action.  Dkts 1, 11; *see also* No. 22-cv-04440 at ECF 11.  Plaintiffs then filed a Motion to Remand and requested the Court defer further briefing on BANA's Motion to Dismiss, which the Court granted.  Dkts. 12, 13, 16.

The Complaint alleges BANA violated the Pennsylvania Uniform Commercial Code ("UCC") by providing inadequate notice under the terms of the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA") to a class of consumer borrowers across Pennsylvania.[1]  Compl. ¶¶ 18,

---

[1] Plaintiffs define the class as "All Persons: (a) who financed the purchase of a motor vehicle for consumer use through the Bank by means of an installment sale contract, or who financed the purchase through another entity but such installment sale contract was thereafter assigned to the Bank; (b) from whom the Bank, as secured party, repossessed the vehicle or ordered it repossessed; (c) who had a Pennsylvania address as of the date of repossession; (d) who were sent a post-

23, 56.  Specifically, Plaintiffs allege BANA "sent template forms of Notice to consumers across Pennsylvania providing an inadequate and commercially unreasonable period of time to act to redeem their motor vehicle, i.e., less than 15 days to act."  *Id.* ¶ 23.  However, Plaintiffs state they "are not seeking to be compensated for, nor do they claim, any actual damages as a result of the Bank's non-compliance with law, rather Plaintiffs seek the minimum, statutory damages provided by the UCC."  *Id.* ¶ 55.

In support of removal under CAFA, BANA offered the Declaration of Cheryl L. Gil as evidence that the putative class at issue, made up of accounts of individuals (a) who financed the purchase of a motor vehicle for consumer use through the Bank by means of an installment sale contract, or who financed the purchase through another entity but such installment sale contract was thereafter assigned to the Bank; (b) from whom the Bank, as secured party, repossessed the vehicle or ordered it repossessed; (c) who had a Pennsylvania address as of the date of repossession; (d) who were sent a post-repossession Notice of Plan to Sell Property or equivalent post-repossession notice of rights which set forth a day after which the collateral may be sold; (e) in the period commencing six years prior to the date of filing of the Complaint through the time of removal contained 1,024 accounts.[2]  Dkt. 1 ¶¶ 9, 20.  Ms. Gil further provided that the total statutory damages sought by this population, based on a calculation of the total credit service charges plus 10% of the principal amount of the obligations is $14,274.223.30, without accounting

---

repossession Notice of Plan to Sell Property or equivalent post-repossession notice of rights which set forth a date after which the collateral may be sold that was less than 15 days from the date the notice was mailed to the debtor (not counting the day the notice was mailed); (e) in the period commencing six years prior to the date of filing of the Complaint through the date of class certification."  *Id.* ¶ 41.

[2] Plaintiffs' Motion states that BANA offered a data set with 1,041 members, but that figure is from the removal of the Prior Action.  No. 22-cv-04440 at ECF 11.  Here, based on the date of filing of this Complaint and a statute of limitations of six years, BANA identified 1,024 accounts.

for any other allowable damages under the UCC. *Id.* ¶ 31. BANA used this information to demonstrate the amount in controversy is well in excess of $5,000,000 and that the class contains at least 100 members, as required by CAFA. *See* Dkt. 1. Plaintiffs then sought remand, claiming BANA failed to meet its burden. Dkt. 13.

### III.    LEGAL STANDARD

A civil action may be removed from state court to the federal district court for the district where such action is pending if that district court would have had original jurisdiction over the claims. 28 U.S.C. § 1441(a). However, if the district court lacks subject matter jurisdiction over the claims, the case must be remanded to state court. *See* 28 U.S.C. § 1447(c). Under CAFA, "[the] district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The alleged class must also consist of at least 100 members to invoke CAFA, and the claims of class members are aggregated to determine the amount in controversy. *Id.* at 28 U.S.C. § 1332(d)(11)(B)(i).

Where a plaintiff contests a defendant's removal under CAFA based on amount-in-controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). Though it is generally the removing party's burden to establish jurisdiction, where the plaintiff does not specifically aver in the complaint that the amount in controversy is less than the jurisdictional minimum, the case should be remanded only if it appears to a "legal certainty" that the plaintiff cannot recover the jurisdictional amount. *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (holding amount in controversy met

where defendant relied on plaintiff's allegations to determine putative class size and potential damages).  Unlike other jurisdictional bases, there is no presumption against removal or federal subject matter jurisdiction in CAFA actions; indeed, guidance from Congress states that CAFA's "provisions should be read broadly" and with a "strong preference" for keeping class actions in federal court. *Dart Cherokee*, 574 U.S. at 89 (quoting S. Rep. No. 109–14, p. 43 (2005)).

Further, Courts regularly protect a defendant's statutory right of removal and prohibit plaintiffs' attempts to manipulate their way back to state court by pleading away federal jurisdiction. *See, e.g., Robinson v. Holiday Universal, Inc.*, No. Civ.A. 05-5726, 2006 WL 470592, at *3 (E.D. Pa. Feb. 23, 2006) (explaining that defendant properly removed action because "all of the jurisdictional requirements of CAFA were then met," and holding that "Plaintiffs cannot now 'unring the bell' . . . in an attempt to return the lawsuit" to state court).[3]

In relation to CAFA, Congress was particularly concerned that the "current law enables plaintiffs' lawyers who prefer to litigate in state courts to easily 'game the system' and avoid removal of large interstate class actions to federal court." S. Rep. 109-14, 10, 2005 U.S.C.C.A.N. 3, 11.  In enacting CAFA, the Legislature specifically explained:

---

[3] *See also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) (explaining that "removal cases raise forum-manipulation concerns" and acknowledging that when a defendant removes a case to federal court, "an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction"); *Wright Transp., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1272 (11th Cir. 2016) (confirming in CAFA case that forum-manipulation concerns "dictate that we guard against a plaintiff whose case has been removed to federal court and who then amends its pleadings in an attempt to manipulate its way back into state court"); *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101-02 (2d Cir. 2015) (recognizing risk of forum manipulation and holding that post-removal amendment dropping class-action allegations did not defeat CAFA jurisdiction); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 428 (5th Cir. 2014) (acknowledging "the potential for forum manipulation," and holding that post-removal amendment adding local defendant did not defeat CAFA jurisdiction); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) (holding that post-removal amendment did not defeat CAFA jurisdiction, and reasoning that "allowing plaintiffs to amend away CAFA jurisdiction after removal would present a significant risk of forum manipulation.").

> [C]lass action lawyers typically misuse the jurisdictional threshold to keep their cases out of federal court.  For example, class action complaints often include a provision stating that no class member will seek more than $75,000 in relief, even though they can simply amend their complaints after the removal to seek more relief and even though the class action seeks millions of dollars in the aggregate.  Under current law, that is frequently enough to keep a major class action in state court.

S. Rep. 109-14, 10-11, 2005 U.S.C.C.A.N. 3, 11-12.  The Senate Report further highlighted that, "[the] current law enables lawyers to 'game' the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes . . . ." S. Rep. 109-14, 3, 2005 U.S.C.C.A.N. 3, 5-6.  Thus, CAFA was "intended to expand substantially federal court jurisdiction over class actions" to cure these "abuses."  S. Rep. 109-14, 43, 2005 U.S.C.C.A.N. 3, 41; PL 109-2, Feb. 18, 2005, 119 Stat 4.

## IV.    ARGUMENT

### A.    BANA Properly Relied on the Complaint and Plaintiffs' Allegations to Establish Class Size and Amount in Controversy.

Plaintiffs assert that this action must be remanded because BANA has proffered overinclusive data on the putative class that does not strictly conform to Plaintiffs' definition.  Mot. at 4-5.  To the contrary, BANA has relied on Plaintiffs' allegations in the Complaint in preparing its putative class data—specifically taking as true Plaintiffs' allegation that "[BANA], as secured party, sent *template forms of Notice to consumers across Pennsylvania* providing an inadequate and commercially unreasonable period of time to act to redeem their motor vehicle, i.e., less than 15 days to act."  Compl. ¶ 23 (emphasis added).  In other words, BANA accepted as true for purposes of removal Plaintiffs' allegation that they received the same notices as other borrowers in Pennsylvania.

In the Third Circuit, a defendant is entitled to rely on the good faith allegations pled in the complaint for purposes of removal.  *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 506 (3d Cir. 2014) (holding plaintiff pleaded information supporting jurisdictional requirement upon

which defendant was entitled to rely).  Where a plaintiff alleges the defendant's conduct was uniform or systematic, the defendant may treat that as true in developing its class data for jurisdictional purposes even if it is overinclusive.  *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 488 (W.D. Pa. 2009).  The court's focus in scrutinizing a defendant's data is whether it can conclude it is "more likely than not" that the minimum monetary and member requirements can be met by even a fraction of the proffered data.  *Id.*  A "defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'"  *Id.* at 484 (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)).

In *Lewis*, the Western District of Pennsylvania considered plaintiffs' motion to remand based on arguments that defendant Ford's removal was based on "conclusory allegations" and that its class data was overinclusive because it failed to narrow the data precisely to the confines of the class definition.  610 F. Supp. 2d at 480-88.  The plaintiffs sued Ford on behalf of a class of Pennsylvania consumers for allegedly defective vehicles under state statutory law, and Ford removed the action to federal court under CAFA.  *Id.* at 478-79.  Upon a motion to remand, Ford opposed and offered a declaration stating that nearly 22,000 of the at-issues vehicles had been shipped to Pennsylvania for sale during the relevant time and that the minimum recovery per class member would be approximately $250—concluding that the amount in controversy would be between at least $7 million and $21 million (dependent upon treble damages under one of plaintiffs' claims).  *Id.* at 481.  The plaintiffs offered no evidence in challenging the declaration, stating only that the numbers were "pulled from thin air" and were merely speculative.  *Id.* at 485.

After calculating the actual and punitive damages and adding 30% to the figure for attorneys' fees under the applicable statutes, the Court determined that the class need only consist of 3,847 of the nearly 22,000 offered by Ford to establish the 100-member requirement.  *Id.* at 486.

It further concluded that it was more likely than not that the class contained this many members to establish the amount in controversy because it was not "rash speculation" that one in six vehicles sent to Pennsylvania would have been purchased by a Pennsylvania consumer and was defective, particularly where the plaintiffs alleged the issue was uniform as to all at-issue vehicles. *Id.* at 487-88. Finally, the Court declined to disregard Ford's evidence because "[m]erely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient." *Id.* at 485 (quoting *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009) and citing *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 299 (4th Cir. 2008) (where plaintiffs "offered nothing" to challenge defendant's affidavit, defendant had established the amount in controversy under CAFA.).

As in *Lewis*, BANA has relied on Plaintiffs' allegation that the alleged violation is uniform across Pennsylvania borrowers, and it has offered data and calculations allowing the Court to determine that the size requirement and amount in controversy are met based on a very specific pull of data and exact calculations of statutory damages as Plaintiffs assert in their Complaint. *See* Dkt. 1. It is apparent from the face of the Complaint that BANA's class data is consistent with Plaintiffs' assertions because Plaintiffs themselves have alleged this issue pertains to a "template forms of Notice" sent "across Pennsylvania." Compl. ¶ 23.[4] In challenging removal, Plaintiffs offer nothing to establish, or even suggest, that the proposed class would be more limited than what BANA has presented.[5] Indeed, Plaintiffs do not even argue that their damages are below the

---

[4] Plaintiffs' arguments in favor of remand are belied by their own allegations: Plaintiffs specifically state that "[a]ll class members either were sent inadequate form Notice, *or were sent no notice at all*." *Id.* ¶ 44 (emphasis added). Plaintiffs' argument that the class data offered must contain only those who received "short notice" is at odds with their own allegations that BANA is allegedly liable to the class for sending "no notice at all."

[5] At bottom, Plaintiffs allege that their claims are appropriate for class treatment, which requires allegations that Plaintiffs are typical of other borrowers and not an anomaly. Compl. ¶¶ 44.

jurisdictional amount, let alone provide a basis for this Court to make such a finding with the required "legal certainty." *Frederico*, 507 F.3d at 197.

Moreover, the Court need not determine that all 1,024 accounts would be included in the alleged class and instead may conclude the amount in controversy is met by calculating the minimum number of class members based on the average recovery. *See Lewis*, 610 F. Supp. 2d at 488; *Napoli v. HSBC Mortg. Servs. Inc.*, No. 12-CV-222 RMB-AMD, 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012). As stated in BANA's Notice of Removal, the average amount of statutory damages for this population is $13,939.67, meaning that to satisfy CAFA requirements the class must include only approximately 359 accounts. *See* Dkt. 1 ¶ 35. Yet, Plaintiffs do not contest BANA's calculation and instead object that it failed to provide the precise number of members who received "short notice." Mot. at 6 n.2. Pursuant to the standard set forth above, BANA is entitled to rely on Plaintiffs' own allegations in formulating the amount in controversy.

In support of their position, Plaintiffs resort to an out of Circuit and unreported case from the District of Maryland. Mot. at 6-7. In *James v. Santander Consumer USA, Inc.*, the district court held that the defendant failed to establish jurisdiction under CAFA when it provided putative class data with criteria did not exactly match the class definition. No. CIV. JFM-15-654, 2015 WL 4770924, at *3 (D. Md. Aug. 12, 2015). Plaintiffs' reliance on *James* is flawed not only because it is extra-jurisdictional and contrary to law in this Circuit, but also because it is distinguishable from the allegations here and it has since been rejected in that Circuit.

The reasoning underpinning *James* was later considered and rejected by the Court of Appeals for the Fourth Circuit. A similar situation arose in *Scott v. Cricket Commc'ns, LLC* where

---

Plaintiffs cannot then deny common treatment to the alleged class purely to avoid federal jurisdiction.

the district court ordered the case to be remanded for failure to establish CAFA jurisdiction due to

alleged overinclusive class data proffered upon removal.   No. CV GLR-15-3330, 2016 WL

4415047, at *1 (D. Md. Aug. 19, 2016), *vacated and remanded*, 865 F.3d 189 (4th Cir. 2017).   The

district court opinion relied heavily on *James*, holding that the defendant could not provide an

estimate of class members that differed from the pleaded definition because plaintiff, as "master

of the complaint[,] . . . can choose to circumscribe his class definition to avoid federal jurisdiction

under CAFA."  *Id.* at *6.   However, on appeal, the Fourth Circuit rejected this narrow view:

> A removing defendant can use overinclusive evidence to establish the amount in
> controversy so long as the evidence shows it is more likely than not that 'a fact
> finder might legally conclude that' damages will exceed the jurisdictional amount.
> . . . While Cricket need not tailor its evidence to exactly match Scott's proposed
> class, it must provide enough factual detail for the district court to discharge its
> constitutional duty and assess whether jurisdiction exists.

*Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196-97 (4th Cir. 2017) (vacating remand order and

reversing for assessment of evidence proffered notwithstanding potential for overinclusive data)

(citations omitted).   Though the appellate court did not explicitly identify *James*[6] in reversing the

*Scott* district court, the reasoning supporting *James* has clearly been rejected and should not be

lent credence by this Court.[7]

---

[6] For clarity, the *James* decision relied on *Caufield v. EMC Mortgage Corp*., 803 F. Supp. 2d 519
(S.D. W. Va. 2011).   In turn, the district court in *Scott* relied on *James*, *Caufield*, and other similar
opinions within the Fourth Circuit in its determination, but the *Scott* appellate opinion did not
expressly mention any of these cases when vacating the court's remand order; rather, the Fourth
Circuit rejected the foundational reasoning of these cases and thus none are persuasive.

[7] Additionally, the allegations proffered by Plaintiffs differ from that in *James*.   There, the court
decided the defendant took plaintiff's allegations in the complaint out of context, finding that the
allegation "Santander *uniformly and systematically* failed to comply with the statutory
requirements for providing notice in connection with the repossession and sale of the vehicles *of
Named Plaintiff and the Class*" applied only to uniform conduct against the defined class rather
than the total population.  *Id.* at *3 (emphasis added).   However, Plaintiffs here make no such
limitation in stating that "[BANA], as secured party, *sent template forms of Notice to consumers
across Pennsylvania* providing an inadequate and commercially unreasonable period of time to act
to redeem their motor vehicle, i.e., less than 15 days to act."  Compl. ¶ 23 (emphasis added).   In

As such, Plaintiffs' arguments regarding remand should be disregarded.

**B.      Plaintiffs' Attempts at Forum Shopping and Forcing BANA to Admit Liability Should Not Be Countenanced.**

Plaintiffs' Complaint represents the very type of jurisdictional manipulation and forum-shopping that CAFA was designed to prevent.   Plaintiff voluntarily dismissed the Prior Action after removal to this Court and filed the instant duplicative Complaint specifically disclaiming actual damages, *i.e.*, to avoid a finding of injury in fact to support standing and attempting to narrow the class to contain only those notices that provided for a period of time prior to sale that, according to Plaintiffs' theory of liability and method of counting, would result in a statutory violation.  Compl. ¶¶ 18, 41 (requiring "the day that notice was mailed" to not be included in the calculation).  According to Plaintiffs, BANA would be required to admit both liability and the ascertainability of the proposed class in assembling the class data for removal purposes.[8] Plaintiffs' proposed rule would hold BANA to a higher standard of particularity for removal than that which is required.

According to this Court, Plaintiffs' strategy is not appropriate, as, "[r]equiring Defendant to identify with particularity class members who it harmed is tantamount to requiring Defendant

---

effect, Plaintiffs allege that the class encompasses *all* Pennsylvania consumers, which is precisely what BANA's data offers.

[8] Indeed, this effectively transforms Plaintiffs' class definition into a "fail-safe" class where the class is only ascertainable upon a finding of the defendant's liability, as it is Plaintiffs' theory that less than 15 days' notice prior to the potential sale of the vehicle (excluding the date of mailing) results in liability.  *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) (striking fail-safe class allegations, explaining that "[a]fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'"); *see also* 1 Newberg on Class Actions § 3:6 (5th ed. Dec. 2021 update) (explaining a fail-safe class "require[s] a court to decide the merits of prospective individual class members' claims to determine class membership"); Parasharami & Ranlett, *Removing the 'Fail-Safe' Class Action Under CAFA*, 31 No. 4 CLASS ACTION REPORTS ART 2 (2010) (noting a fail-safe class "force[s] a defendant to concede liability as the price of admission to federal court").

to concede liability," and it "does not need to concede liability to establish federal jurisdiction." *Callery v. HOP Energy, LLC*, No. CV 20-3652, 2022 WL 3213828, at *2 (E.D. Pa. Aug. 9, 2022) (denying remand over plaintiff's challenge that defendant assumed every program customer was part of class instead of only "overcharged" customers). Plaintiffs' position forces BANA to choose between two absurd results: either admit Plaintiffs' theory of liability by providing data strictly consistent with their revised class definition and theory of liability in order to stay in federal court, or forego the proper federal forum to preserve its rights to challenge Plaintiffs' allegations, both as to liability and as to whether a class can be ascertained. This should not be permitted.

### C. Article III Standing Exists, and Plaintiffs Cannot Disclaim Actual Damages to Avoid Federal Jurisdiction on Behalf of a Class.

Plaintiffs alternatively argue that this action must be remanded because Plaintiffs are not claiming an Article III injury required to support federal standing. Mot. at 7-8. This Court has already found that the claims alleged here support Article III standing, and, regardless, purported class representatives cannot disclaim actual damages on behalf of a class.

This Court recently decided that similar claims under the UCC established an injury in fact. In *Kelly v. Santander Consumer USA Inc*., Judge Baylson provided a lengthy discussion distinguishing a bare procedural violation and a claim which presents a "material risk of harm," the latter of which confers Article III standing. No. CV 20-3698, 2021 WL 518434, at *8 (E.D. Pa. Feb. 10, 2021) (denying motion to remand). There, the Court found that claims for deficient post-repossession notices to a consumer borrower were not "merely technical violations removed from any real risk of harm" because such claims undermine the very purpose to protect borrowers from predatory repossession practices. *Id.*

As in *Kelly*, Plaintiffs assert that BANA sent allegedly deficient notices under the same statutes governing vehicle repossessions and sales. Though BANA maintains that Plaintiffs have

failed to state a claim under the Federal Rules, standing is a constitutional inquiry that remains unchallenged by BANA; indeed, a foundational argument to the Motion to Dismiss is that a UCC claim necessarily requires factual allegations that BANA's actions "did not provide a sufficient amount of time to *protect [Plaintiffs'] interests*." Dkt. 11-1 at 11 (emphasis added). *See also Langer v. Capital One Auto Finance*, No. 16-6130, 2019 WL 296620, at *5 (E.D. Pa. Jan. 23, 2019) (denying motion to remand in case alleging violations of the MVSFA and UCC, including the alleged 15-day notice requirement, finding that "repossession of [] vehicles in a manner contrary to Pennsylvania law" was a "particularized and concrete injury.").[9]

Moreover, the Supreme Court has admonished attempts to "remove [a] case from CAFA's scope" by limiting the damages or other remedies sought by absent class members. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590 (2013). A plaintiff cannot style her complaint to "reduce[] the value of the putative class members' claims" because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Id.* at 593 (citing *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) ("[A] nonnamed class member is [not] a party to the class-action litigation before the class is certified")).

In *Standard Fire*, the plaintiff filed a complaint in state court, which stipulated the plaintiff and the putative class members would "seek to recover total aggregate damages of less than five million dollars." *Id*. at 591. The defendant removed the case to federal court based on CAFA jurisdiction, and the plaintiff moved to remand based on the damages limitation in the complaint. *Id.* In light of the plaintiff's stipulation, the district court remanded the case to state court. *Id.* The

---

[9] Indeed, it is not inconsistent that the claim implicates actual injury for purposes of standing, while at the same time Plaintiffs have failed to plead facts showing that the disposition of *their* vehicles was commercially unreasonable, which is required to state the claim they assert under the UCC. *See Hudson v. Eaglemark Savings Bank*, 475 F. App'x 423, 426-27 (3d Cir. 2012).

Supreme Court vacated the order, holding that the district court wrongly concluded that plaintiff's

pleading could overcome CAFA jurisdiction.  *Id*. at 593.  The Supreme Court held the plaintiff

"lacked authority to concede the amount in controversy for absent class members" because "a

named plaintiff cannot bind precertification class members."  *Id*. at 588.  The Supreme Court

reasoned:

> We do not agree that CAFA forbids the federal court to consider . . . the very real
> possibility that a nonbinding, amount-limiting, stipulation may not survive the class
> certification process. This potential outcome does not result in the creation of a new
> case not now before the federal court. To hold otherwise would, for CAFA
> jurisdictional purposes, treat a nonbinding stipulation as if it were binding, exalt
> form over substance, and run directly counter to CAFA's primary objective:
> ensuring "Federal court consideration of interstate cases of national importance." It
> would also have the effect of allowing the subdivision of a $100 million action into
> 21 just-below-$5-million state-court actions simply by including nonbinding
> stipulations; such an outcome would squarely conflict with the statute's objective.

*Id.* at 594-95.  The Supreme Court further explained that although federal courts "permit ***individual***

plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain

a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional

requirement," an individual plaintiff "cannot yet bind the absent class."[10]  *Id.* at 595-96 (emphasis

added).  Thus, the district court "should have ignored th[e] stipulation." *Id.* at 596; *see also e.g.,*

*Winkworth v. Spectrum Brands, Inc*., No. CV 19-1011, 2019 WL 5310121, at *3 (W.D. Pa.

Oct. 21, 2019) ("[T]o the extent that Plaintiffs now seek to limit the replacements/refunds to the

Pennsylvania Class, their position conflicts with the holding of the United States Supreme Court

---

[10] Plaintiffs' disclaimer of the potential recovery and Article III standing of absent class members
also raises questions regarding Plaintiffs' adequacy to represent the class, as explained by the
Supreme Court.  *See Standard Fire*, 568 U.S. at 594 ("[A] court might find that [plaintiff] is an
inadequate representative due to the artificial cap he purports to impose on the class' recovery.")
(citing *Back Doctors Ltd. v. Metropolitan Property & Cas. Ins. Co.*, 637 F.3d 827, 830-831 (7th
Cir. 2011) (noting a class representative's fiduciary duty not to "throw away what could be a major
component of the class's recovery")).

that a prospective class member cannot legally bind members of a proposed class before the class is certified . . . . In fact, as representatives of the putative Nationwide Class, it is Plaintiffs' fiduciary duty not to 'throw away what could be a major component of the class's recovery.'") (citing *Standard Fire,* 568 U.S. at 596 and *Back Doctors Ltd*., 637 F.3d at 830-31).

Here, as in *Standard Fire,* Plaintiffs' attempt to disclaim available remedies and damages on behalf of absent putative class members is unenforceable and cannot be used by Plaintiffs to defeat federal jurisdiction under CAFA.  As outlined in *Langer*, 2019 WL 296620, allegations of violation of the UCC relating to auto repossessions not only implicates statutory damages, but such claims can arguably result a finding that Plaintiffs "should not have lost title to their vehicles" and that "any remaining indebtedness to [the defendant] for the vehicles should be extinguished due to [the lender's] failure to act in a commercially reasonable manner."  *Id.* at *1, 5; *see also Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813 (E.D. Pa. 1993) (holding a secured party who gives inadequate notice bears "the burden of proving the market value of the collateral and the commercial reasonableness of the sale before assessing whether or not it is entitled to a judgment in its favor for a deficiency") (citing *Beneficial Consumer Discount Co. v. Savoy*, 436 A.2d 687, 689 (Pa. Super. Ct. 1981)).  Plaintiffs do not have authority to bind the putative class prior to certification and disclaim potential recovery on their behalf for any reason, but certainly not to avoid federal jurisdiction.

## V.    CONCLUSION

Accordingly, the Court should deny Plaintiffs' Motion to Remand because removal was proper under CAFA and an Article III injury has been alleged and cannot be disclaimed by putative class representatives.

Dated: March 10, 2023

Respectfully submitted,

**McGUIREWOODS LLP**

/s/ *K. Issac deVyver*
K. Issac deVyver (Pa. Id. 202655)
Karla Johnson (Pa. Id. 307031)
McGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6057
Facsimile: (412) 402-4187
Email: kdevyver@mcguirewoods.com
Email: kjohnson@mcguirewoods.com

Brian E. Pumphrey (*pro hac vice*)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-7745
Facsimile: (804) 698-2018
Email: bpumphrey@mcguirewoods.com

*Attorneys for Defendant*
*Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 10, 2023.

*/s/ K. Issac deVyver*
K. Issac deVyver

*Attorney for Defendant*
*Bank of America, N.A.*
