IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY NELSON and KAYLEIGH POTTER, individually and on behalf of all others similarly situated | : : : : |
| v. | : CIVIL ACTION : : NO. 23-0255 |
| BANK OF AMERICA, NATIONAL ASSOCIATION | : : |

**M E M O R A N D U M**

**Chief Judge Juan R. Sánchez**　　　　　　　　　　　　　　　　　　　　　　**May 18, 2023**

Plaintiffs Gary Nelson and Kayleigh Potter have filed a Motion to Remand this consumer class action to the Court of Common Pleas of Philadelphia County pursuant to 28 U.S.C. §1447(c). Because the Court finds removal was proper, the Plaintiffs' Motion shall be denied.

**FACTUAL BACKGROUND**

According to the Class Complaint, on February 24, 2016, Nelson financed the purchase of a used 2013 Ford Explorer through Bank of America, National Association ("Bank") pursuant to a Retail Installment Sale Contract ("RISC"). Compl. ¶ 11, ECF No. 1-4. In return for the financing, the Bank received a security interest in the vehicle, and Nelson became obligated to make monthly payments to the Bank. *Id.* ¶¶ 12–13. In May of 2021, the Bank declared a default and repossessed Nelson's vehicle. *Id.* ¶¶ 14–15. On May 13, 2021, the day after the repossession, the Bank prepared a Notice of Plan to Sell Property ("Notice") which it mailed to Nelson the following day by certified mail. *Id.* ¶ 17. The Notice advised Nelson that the Bank "will sell the 2013, FORD, EXPLORER at private sale sometime after May 27, 2021" which was thirteen days from the date on which the Notice was mailed. *Id.* ¶ 22.

1

Potter had a similar experience. On March 8, 2017, Potter financed the purchase of a 2017 Chevrolet Impala pursuant to a RISC with the Bank. *Id.* ¶ 24. The Bank became a secured party under the Potter RISC, and Potter became responsible for making monthly payments to the Bank. *Id.* ¶¶ 25–26. In September of 2021, the Bank declared a default and ordered repossession of Potter's car. *Id.* ¶¶ 27-28. On September 29, 2021, the Bank issued and mailed a Notice of Plan to Sell Property to Potter, advising it would sell the vehicle at a sale sometime after October 13, 2021. *Id.* ¶ 29. This was fourteen days from the date of mailing. *Id.*

The Complaint alleges that Pennsylvania law (12 PA. CONS. STAT. § 6254) requires immediate post-repossession notice to be given to the borrower advising of the repossession and informing the borrower of how many days he or she has to act to redeem the vehicle before its sale, whether the vehicle will be sold by public or private sale, and whether the debtor may be liable for a deficiency or entitled to a surplus, and also requires this notice to be delivered to the borrower in person or sent registered or certified mail. *Id.* ¶ 16. *See also* 13 PA. CONS. STAT. § 9614 (outlining contents and form of notification required under Pennsylvania Uniform Commercial Code before disposition of collateral in consumer goods transactions). Additionally, the foreclosing bank is required to inform the borrower that he or she has the right to redeem the vehicle within fifteen days. *Id.* ¶ 18. The remedies available for a secured party's failure to comply with these requirements are set forth in 13 PA. CONS. STAT. § 9625.

On December 23, 2022, Nelson and Potter[1] filed a complaint in the Philadelphia County Court of Common Pleas against the Bank on behalf of themselves and "all others similarly situated" to "redress systemic violations of Pennsylvania's Uniform Commercial Code, 13 PA. C.S. § 9601, et. seq." They sought the minimum statutory damages as provided by the UCC,

---

[1] In the interest of brevity, Nelson and Potter shall hereafter simply be referred to as "Plaintiffs."

adopted in Pennsylvania, under 13 PA. CONS.STAT. § 9625(c)(2). *Id.* ¶¶ 1, 54. The class as Plaintiffs propose to define it is "All Persons:

(a) who financed the purchase of a motor vehicle for consumer use through the Bank by means of an installment sale contract, or who financed the purchase through another entity but such installment sale contract was thereafter assigned to the Bank;

(b) from whom the Bank, as secured party, repossessed the vehicle or ordered it repossessed;

(c) who had a Pennsylvania address as of the date of repossession;

(d) who were sent a post-repossession Notice of Plan to Sell Property or equivalent post-repossession notice of rights which set forth a date after which the collateral may be sold that was less than 15 days from the date the notice was mailed to the debtor (not counting the day the notice was mailed);

(e) in the period commencing six years prior to the date of filing of the Complaint through the date of class certification."

*Id.* ¶ 41.

On January 20, 2023, the Bank filed a Notice of Removal to this Court on the grounds that there is subject matter jurisdiction under the Class Action Fairness Act (CAFA). Def's Removal Notice ¶¶ 15–16, ECF No. 1. In response, Plaintiffs filed this motion to remand, arguing removal is improper because the class action does not meet the minimum requirements under CAFA and Nelson does not have Article III standing. Pl.'s Mot. Remand 1, ECF No. 13.

**LEGAL STANDARDS**

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court of the United States for the district and division embracing the place where such action is pending." Pursuant to CAFA, original jurisdiction for class action in the federal courts exists when: (1) there is minimal diversity; (2) there are at least 100 putative class

3

members; (3) the amount in controversy based upon the class members' aggregate claims exceeds $5 million exclusive of interest and costs; (4) the primary defendants are not states, state officials, or other governmental entities against whom the district court may be prevented from ordering relief; and (5) the 30-day deadline for removal is met. 28 U.S.C. § 1332(d). In general, a class action may be removed to a district court under the same procedure outlined for removal of cases in 28 U.S.C. § 1446 "without regard to whether any defendant is a citizen of the State in which the action is brought." 28 U.S.C. § 1453(b).

**DISCUSSION**

Plaintiffs contend this case was improperly removed to federal court because the Bank did not base its calculation of the number of class members and amount in controversy on their exact class definition, so the proposed class does not meet the requirements of CAFA. Pl.'s Mot. Remand 4–5, ECF No. 13. According to the Bank, there are 1,024 people who, within the last six years, financed the purchase of a motor vehicle either directly by means of an installment sale contract or through another entity from whom the Bank received a security interest through assignment.[2] CAFA requires at least 100 members. 28 U.S.C. § 1332(d). Plaintiffs argue the Bank's calculation of class members is incorrect, because the proposed class certification includes only the members who received a Notice of Plan to Sell Property that had a sale date of less than 15 days. Pl.'s Mot. Remand, 4–5, ECF No. 13.

Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy requirement is satisfied. *Morgan v. Gay*, 471 F.3d 469,

---

[2] Tracking the language used in the Complaint, the Bank further describes this group of people as those who, "as a secured party, repossessed the vehicle or ordered it repossessed, who had a Pennsylvania address as of the date of the repossession, and who were sent a post-repossession Notice of Plan to Sell Property or post-repossession notice of rights." Def.'s Removal Notice ¶ 20, ECF No. 1.

4

473 (3d Cir. 2006).  In making such determination, a court evaluates the allegations in the complaint and a defendant's notice of removal.  *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).  Like the general pleading requirement in Federal Rule of Civil Procedure 8(a), a defendant's notice of removal under 28 U.S.C. § 1446(a) need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 89 (2014).  This is because when a plaintiff invokes federal court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith, and similarly, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87 (internal citations omitted).

Where, however, the amount in controversy is disputed, there are two distinct tests which are relevant to determining the propriety of removal jurisdiction in a CAFA case; ascertaining which test is properly applied in resolving the dispute depends on the nature of the jurisdictional facts alleged.  *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500, 504 (3d Cir. 2014). The "legal certainty" test applies "where the jurisdictional facts are not contested and the amount in controversy is determined in whole or in part by applicable law." *Id.* at 505 (quoting *Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 397-398 (3d Cir. 2004)).  Under this test, where no factual challenge is raised to CAFA allegations, they are controlling unless "it is clear to a legal certainty that the plaintiff cannot recover the amount claimed." *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 227 (3d Cir. 2019).  But if "a challenge to the amount in controversy had been raised in the pleadings or the notice of removal," and no evidence or factual findings in the trial court addressed the issue, the preponderance of the evidence test applies and "the party alleging jurisdiction [must] justify [their allegations] by a preponderance of the evidence." *Judon,* 773 F.3d

5

at 504 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 1135 (1936)). And of course, under CAFA, "to determine whether the matter in controversy exceeds the sum or value of $5,000,000," the "claims of the individual class members shall be aggregated." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590 (2013) (quoting 28 U.S.C. § 1332(d)(6)).

Further, when reading state court complaints, "estimations of the amounts recoverable must be realistic" such that the "[t]he inquiry should be objective and not based on fanciful, 'pie-in-the-sky'" or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Samuel-Bassett,* 357 F.3d at 403.  In cases with demands of indeterminate value, "the amount in controversy is not to be measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Inaganti v. Columbia Prop. Harrisburg LLC*, Civ. No. 10–1651, 2010 WL 2136597, at *3 (E.D. Pa. May 25, 2010) (quoting *Angus v. Shelly Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).  In cases where the evidence presented is insufficient to meet the removing party's burden of proof, courts must either remand the case to state court or order further jurisdictional proceedings. *Callery v. HOP Energy, LLC*, Civ. No. 20-3652, 2021 WL 1141650, at *2 (E.D. Pa. Mar. 24, 2021); *see also, Frederico*, 507 F.3d at 194 (noting remand is proper if it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount) (internal citations omitted).

In this case, Plaintiffs do not aver a specific or exact number for damages, but rather only that the amount sought to be recovered is the "minimum amount of statutory damages" required by 13 Pa CONS. STAT. § 9625(c)(2).  Compl. ¶ 55, ECF No. 1-4.  Under this statute:

> [I]f the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

The Complaint also alleges: "[t]he two figures needed for the statutory damage calculation are plainly visible on and determinable from the face of the consumer's motor vehicle retail installment sale contract." *Id*. ¶ 39.

Using these criteria, the Bank has calculated the statutory minimum damages in two ways.[3] First, it identified 1,024 accounts over the six-year period prior to the filing date of the Complaint through the present in which it exercised its rights as a secured creditor to repossess or order repossession of secured vehicles which had Pennsylvania addresses at the time of repossession and which were sent a Notice of Plan to Sell Property or equivalent post-repossession notice of rights setting a day after which the collateral vehicles could be sold. Def.'s Removal Notice Ex. 5, ¶ 5 ECF No. 1-5. The total amount of credit service charges for those 1,024 accounts is $10,617,259.78, and 10% of the total principal amounts of the obligations relating to those accounts equals $3,656,963.52. *Id*. ¶¶ 6, 7; Def.'s Removal Notice ¶¶ 31–34, ECF No. 1. Alternatively, using the average of Nelson and Potter's possible recovery, $9,919.33[4], and multiplying it by 1,024, the minimum statutory damages under that calculation would be $10,157,393.92. Def.'s Removal Notice ¶¶ 40–44, ECF No. 1. Even in the event that only one-half of the accounts identified by the Bank involved Notices of Plan to Sell Property with a sale date of less than the requisite 15 days, the class would consist of some 500 members and involve

---

[3] The Bank's evidence on these matters consists of the January 19, 2023 Declaration of Cheryl L. Gil, who is its Vice President/Executive Business Support Manager II, Credit Assistance. Ms. Gil's Declaration is attached as Exhibit 5 to the Notice of Removal. *See* Gil Decl., ECF No. 1-5.

[4] Nelson's RISC reflects that the principal amount financed was $24,570.55 with a finance charge of $5,412.41, and thus he is effectively seeking to recover $7,869.47 in minimum statutory damages ($5,412.41 + $2,457.06 for 10% of the principal financed). Potter's RISC shows a finance charge of $8,127.35 and the principal amount financed was $38,418.40. Potter is therefore seeking minimum statutory damages of $8,127.35 + $3,841.84 or $11,969.19. Def.'s Removal Notice ¶¶ 41, 42, ECF No. 1.

minimum statutory damages of over $5,000,000. Hence, if discovery later reveals the CAFA jurisdictional pre-requisites are not satisfied, remand would be in order. For now, however, the Court finds the Bank has met its burden to show by a preponderance of the evidence[5] that the proposed class consists of more than 100 members and the $5,000,000 threshold for removal under CAFA has been met.

Plaintiffs alternatively argue for remand on the grounds that the Complaint has not alleged any injury-in-fact under Article III of the U.S. Constitution. Article III governs constitutional standing and restricts the jurisdiction of the federal courts to actual "cases or controversies." U.S. Const. Art. III §2. To establish standing to sue under Article III, a plaintiff must show: (1) "an injury in fact"; (2) a sufficient "causal connection" between the injury and the conduct complained of; and (3) a "likelihood" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-158 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1991)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal citation omitted). For an injury to be "particularized," it must affect the plaintiff in a personal and individual way, and to be "concrete," an injury must actually exist, though it need not necessarily be tangible. *Id.* at 340. Intangible injuries, as well as harms that are difficult to prove or measure, can be concrete. *Rauhala v. Greater N.Y. Mut. Ins., Inc.*, Civ. No. 22-1788, 2022 WL 16553382, at *3 (E.D. Pa. Oct. 31, 2022) (citing *Spokeo*, 578 U.S. at 340-341). In the context of a class action, Article III must be satisfied by at least one named plaintiff/class

---

[5] Given that the jurisdictional facts in this case have been contested and some evidence produced, the Court finds the appropriate standard for determining the propriety of removal is that of preponderance of the evidence.

representative; "so long as a named class representative has standing, a class action presents a valid "case or controversy" under Article III. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359, 369 (3d Cir. 2015).

In support of remand, Plaintiffs cite *Trans Union LLC v. Ramierez*, 141 S. Ct. 2190 (2021)[6] for the propositions that standing must be demonstrated "separately for each form of relief sought" and "at all stages of litigation," as well as for reiterating the necessity to show a concrete harm was suffered. *Id*. at 2200, 2210. In *Trans Union*, "the Supreme Court explained that the requirement of concrete injury means that not all plaintiffs who allege a violation of a statutory right have Article III standing to bring suit over that violation." *Deutsch v. D & A Servs. LLC*, Civ. No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023) (citing *Trans Union*, 141 S. Ct. at 2205). Rather, "[o]nly some violations of statutory rights – such as those that cause 'traditional tangible harms' or 'intangible harms' that cause 'injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts' – can give rise to standing." *Id.* The *Trans Union* Court re-affirmed that the law does permit recovery even if the harm may be difficult to prove or measure, and that there is a "significant difference" between an "actual harm that has occurred but is not readily quantifiable" and a "mere risk of future harm." *Id.* at 2211 (citing *Spokeo*, 578 U.S. at 341).

---

[6] The issue in *Trans Union* was the standing of some 8,185 class members to sue under the Fair Credit Reporting Act for inaccurate notations in their credit reports that their names matched those on a list of "specially designated nationals" who threaten America's national security maintained by the Treasury Department's Office of Foreign Assets Control ("OFAC"). Trans Union included an OFAC alert in its credit reporting to help businesses comply with federal regulations making it unlawful to transact business with any person on the list. Based upon evidence produced at trial, the Supreme Court found 1,853 of the class members had standing because their misleading credit reports had been provided to third-party businesses, but the remaining 6,332 class members whose internal credit files had not been so provided failed to demonstrate a concrete harm. Those members therefore did not have the requisite standing to sue. *Trans Union*, 141 S. Ct. at 2205.

9

In examining Plaintiffs' Complaint, the conduct complained of is the mailing of notices to class members with incorrect information regarding the length of time they had to redeem their repossessed vehicles. It is entirely plausible that each and every affected class member can show they were harmed by these errors inasmuch as they could and would have been able to pay the arrearages on their loans and redeem their vehicles had they known they had extra time under the statute to do so.

Thus, this action is akin to one in which the alleged harm is an "informational injury," where a plaintiff alleges that she failed to receive information to which she is legally entitled. The Supreme Court has repeatedly held informational injury is sufficiently concrete to confer standing where the failure to disclose is "directly related to" the purpose of the statute. *Kelly v. RealPage, Inc.*, 47 F.4th 202, 211, 212 (3d Cir. 2022) (internal citations omitted). "[R]ather than working a sea change to its informational injury jurisprudence," the *Trans Union* decision instead "simply reiterated the lessons" of prior Supreme Court decisions. *Id*. at 214. That is, "to state a cognizable informational injury," a plaintiff must allege "they failed to receive required information," the omission led to "adverse effects" or other "downstream consequences," and such consequences have a nexus to the interest sought to be protected by the statute. *Id.*

The stated purposes of the notice requirements of the Pennsylvania Motor Vehicle Sales Finance Act, 12 PA. CONS. STAT. § 6254 and the relevant provisions in the Pennsylvania Uniform Commercial Code, 13 PA. CONS. STAT. § 9601, *et. seq.*, are to "promote the welfare of the inhabitants" of the Commonwealth of Pennsylvania and to

> protect its citizens from abuses presently existing in the installment sales of motor vehicles, and to that end exercise the police power of the Commonwealth to bring under the supervision of the Commonwealth all persons engaged in the business of extending consumer credit in conjunction with the installment sales of motor vehicles; to establish a system of regulation for the purpose of insuring honest and

> efficient consumer credit service for installment purchases of motor vehicles; and to provide the administrative machinery necessary for effective enforcement.

*Indus. Valley Bank & Tr. Co. v. Nash*, 502 A.2d 1254, 1261 (Pa. Super. 1985). "By notifying the debtor of the time and place of the public sale, the debtor is given the opportunity to take whatever steps are necessary to protect his interest by taking part in the sale if necessary." *Id.* at 1263. *See also Coy v. Ford Motor Credit Co.*, 618 A.2d 1024, 1026 (Pa. Super. 1993) (noting prior holdings that notice provisions of both MVFSA and UCC apply in cases of repossession and resale after default on motor vehicle sales installment contracts); *Kelly v. Santander Consumer USA Inc.*, Civ. No. 20-3698, 2021 WL 5188434, at *2 (E.D. PA. Feb. 10, 2021) (holding MVFSA "is a regulatory statute the provisions of which are tail[or]ed to protect purchasers of motor vehicles from predatory credit and collection practices"); *Langer v. Cap. One Auto Fin.*, Civ. No. 16-6130, 2019 WL 296620, at *1 (E.D. Pa. Jan. 23, 2019) (denying motion to remand CAFA action seeking damages under Pennsylvania law for allegedly improper repossession fees for lack of standing and finding they sufficiently alleged a particularized and concrete injury, *to wit*, repossession of their vehicles in a manner contrary to Pennsylvania law); *In re Koresko*, 91 B.R. 689, 699 (Bankr. E.D. Pa. 1988) (analyzing predecessor statute to section 9625 and noting one injury that might flow from insufficient motor vehicle repossession notice, although difficult for debtor/obligor to prove, is lost opportunity to attend the sale and affect any deficiency resulting from sale of the vehicle for less than its fair market value).

In view of the clear purposes of the statutes at issue to protect purchasers of motor vehicles from predatory credit and collection practices, the Court finds the Plaintiffs have alleged facts showing an informational injury which is sufficiently concrete to confer standing under CAFA. The motion to remand is therefore denied. The Court reiterates, however, that should it later become apparent that an insufficient number of class members have the requisite injury or amount

in controversy to sustain federal jurisdiction, the matter of remand may then be re-visited. *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 213 (3d Cir. 1997) ("Upon a determination that a federal court lacks subject matter jurisdiction over a particular action, the plain language of 28 U.S.C. § 1447(c) mandates that the matter be remanded to the state court from which it was removed."); Fed. R. Civ. P. 12(h)(3).

      An appropriate Order follows.

      BY THE COURT:

      /s/  Juan R. Sánchez
      _____
      Juan R. Sánchez,      C.J.