IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY NELSON and KAYLEIGH POTTER, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>                              Defendant | NO. 23-CV-00255(JS) |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OR CLARIFICATION OF ORDER DENYING REMAND**

**I.     CAFA jurisdiction cannot be supplied by an arbitrary number for class size.**

In its May 18, 2023 decision denying the motion to remand, the Court carefully analyzed the controlling cases involving CAFA jurisdiction and the burden of proof upon the removing party[1]. The Court noted that the inquiry into the amount recoverable "should be objective and not based on fanciful, 'pie-in-the-sky' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." Slip op. at p. 6 (citing cases). "In cases where the evidence presented is insufficient to meet the removing party's burden of proof, courts must either remand the case to state court or order further jurisdictional proceedings." *Id.*

Plaintiff concurs with this settled legal test as stated by the Court. Plaintiff reluctantly moves for reconsideration because the number of class members, the "identified 1024 accounts" (slip op. at p. 7), is based on only a portion of the class definition. Put otherwise, it does not matter how many repossessions occurred (the 1,024 accounts). What matters is how many repossessions

---

[1]     The test for reconsideration is well settled, and reconsideration should be sought only sparingly. *See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) Yet, reconsideration is warranted when there is "the need to correct a clear error of law or fact or to prevent manifest injustice" *Id*.   This is such a case.

1

occurred where the Bank sent short notice. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) ("definition of [the] proposed class" determines whether $5 million CAFA threshold is met).

The Court noted this point (slip op at p. 4) but for purposes of the motion utilized the inapplicable gross figure of 1,024 repossessions. The Court stated that "[e]ven in the event that only one-half of the accounts identified by the Bank involved Notices of Plan to Sell Property with a sale date of less than the requisite 15 days, the class would consist of some 500 members" and meet the $5 million threshold. Slip op. at pp. 7-8. But why half? Why not one quarter, or another fraction? The Bank provided no evidence of half. Arbitrarily assuming half is contrary to the requirement that the estimate of amount be "objective" and not "fanciful." Slip op. at p. 6 (quoting *Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 403 (3d Cir. 2004)).

A profitable comparison can be made to proof of numerosity in a class case. In *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) the plaintiff attempted to prove the number of class members by use of the total number of service contracts issued, where the class was defined as those consumers with service contracts *where* the contract was not honored or refunded. The Court of Appeals disallowed that approach, holding, "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone" and "the only conclusion that can be drawn from the evidence presented to the trial court is that the number of class members would be equal-to-or-less-than 3,500 and equal-to-or-greater-than zero." *Hayes*, 725 F.3d at 357–58.

With no evidence provided by the Bank upon which to base the number of class members (short-notice repossessions) the arbitrary use of a one-half of 1024 total repossessions is only conjecture, not "proof to a reasonable probability." There are simply "insufficient facts to establish

by a preponderance of the evidence that [this] Court had jurisdiction over the case." *Judon v. Travelers Property Cas. Of Am.,* 773 F.3d 495, 508 (3d Cir. 2014). It was, respectfully, clear error to utilize an arbitrary figure of one-half of all repossessions as an estimate of the class size for CAFA removal purposes. Reconsideration should be granted, and the matter remanded to state court.

**II.     Plaintiff seeks clarification that any jurisdictional discovery should be taken now, before addressing merits.**

The Court was not unaware of the class size problem (slip op. at p. 4) noting "if discovery later reveals the CAFA jurisdictional pre-requisites are not satisfied, remand would be in order." Slip op. at pp. 8, 11. But the Court did not specify *when* this jurisdictional discovery should take place, nor order such discovery to occur immediately, before merits rulings. As things stand now, the Bank's Motion to Dismiss is pending (ECF 11)—upon which counter-briefing and a ruling were deferred pending the threshold determination of this Court's jurisdiction to hear the dispute. ECF 16. If the parties now wade into the merits, the Court may well make major substantive rulings in a case over which it lacks jurisdiction. If the Court does not reconsider and remand as a matter of law for lack of any record evidence of class size and the amount-in-controversy, as discussed above, or for want of standing, see *infra*, the Court should at minimum order the jurisdictional discovery to take place now, before merits briefing and rulings. See *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (as "federal courts are courts of limited jurisdiction, when there is a question as to [the court's subject matter jurisdiction] it is incumbent upon the courts to resolve [jurisdiction] before proceeding to a disposition on the merits") (cleaned up).

Ordering jurisdictional discovery now is not only consistent with settled circuit law, it is the completely practical thing to do. The Bank *obviously knows or can readily determine the class*

3

*size*, i.e., of the total repossessions during the class period, how many of the Bank's repossession notices did not allow for the requisite 15 days.  Plaintiffs here alternatively ask for **clarification** that the jurisdictional discovery referenced in the Court's May 18 memorandum opinion shall take place now, without delay, with merits briefing and disposition deferred until the Court can determine after proper jurisdictional discovery whether it possesses jurisdiction over the subject matter, or not.[2]

### III. The laudable purposes of the Pennsylvania statutes are not a substitute for concrete harm needed to create Article III standing.

In its ruling, the Court noted the "concrete harm" required by the controlling rulings in *Trans Union, LLC v. Ramirez*, 141 S.Ct. 2190 (2021) and *Kelly v. RealPage, Inc.*, 47 F.4th 202 (3d Cir. 2022).  But respectfully, the Court erred by assigning to Plaintiffs allegations of harm that they did not make.  "To state a cognizable informational injury, **a plaintiff must allege** they failed to receive required information, [and] **the omission led to adverse results or other 'downstream consequences'** and such consequences have a nexus to the interest sought to be protected by the statute." Slip op. at p. 10 (*citing RealPage*, 47 F.4th at 214) (cleaned up; emphasis added). In *RealPage*, our Court of Appeals found an informational injury caused concrete harm because of the allegations that the statutory violations caused the plaintiff to "needlessly waste" his time, caused him "confusion" and "unnecessary distress," and impaired his ability to cure his credit issues. *RealPage*, 47 F.4th at 214.

But nowhere in their class complaint did Nelson or Potter allege adverse results or downstream consequences; this is a pure statutory violation.  Plaintiffs pled specifically that they "are not seeking to be compensated for, nor do they claim, any actual damages as a result of the

---

[2]  Plaintiff shall be filing concurrently a motion to extend the deferment of merits briefing pending a ruling on this Motion for Reconsideration.

Bank's non-compliance with law, rather Plaintiffs seek the minimum, statutory damages provided by the UCC for a secured party's failure to comply with [Article 9.]" See Class Complaint ¶ 55 (ECF 1-1). The Bank concurred, noting "neither plaintiff avers that they suffered any injury arising out of their specific circumstances apart from the alleged violation of [the Pennsylvania statutes]." Bank br. at p. 15 of 17, ECF 11-1.

Yet, the Court *sua sponte* posited that "it is entirely plausible that each and every affected class member can show they were harmed by these errors inasmuch as they could and would have been able to pay the arrearages on their loans and redeem[.]" Slip op. at p. 10. While Plaintiffs agree that their claim is in the nature of an informational injury, Plaintiffs did not plead downstream consequences and do not believe it is plausible—or possible—to prove such reliance on the notices and consequent harm. Nor is that Plaintiffs' theory of the case. As this Court noted, the "plaintiff must allege" the resultant adverse result or consequence; these Plaintiffs did not.

The Court rightly noted the laudable purposes of the legislation—to redress lender abuses in the financing of automobiles. Slip op. at pp. 10-11. But the "purposes of the statutes at issue to protect purchasers of motor vehicles," *id.* is not in any way a substitute for the requisite allegation of concrete injury or actual harm. This approach would eviscerate the Supreme Court's concrete harm requirement for standing. Thus, in *Trans Union*, the Court noted the laudable purposes underlying the Fair Credit Reporting Act, including to "protect consumer privacy," 141 S.Ct. at 2200, but those purposes—and indeed Trans Union's violations of the FCRA—did not alone confer standing. *Id.* at 2204–05 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."). A concrete informational injury requires demonstration of adverse impacts or

5

downstream consequences. *Id.* at 2214 (an "asserted informational injury that causes no adverse effects cannot satisfy Article III").

The two UCC repossession cases cited by the Court at p. 11 where a remand motion was denied bear a critical distinction: in each, the plaintiff claimed actual damages or losses. *See Langer v. Capital One Auto Fin.*, 2019 WL 296620 *4 (E.D. Pa. Jan. 23, 2019) (plaintiff's Common Pleas complaint sought "greater of actual or statutory damages," alleged that the Department of Transportation would not have transferred title, and sought an injunction "to collect or enforce any balance for monies due"); *Kelly v. Santander Consumer USA, Inc.*, 2021 WL 518434, *8 (E.D. Pa. Feb. 10, 2021) (plaintiffs alleged collection of an impermissible fee and a "fictitious storage expense"). The concrete injury was not found in the fact that the lender sent a noncompliant notice of repossession, but in those class plaintiffs' plea to redress overcharges or recover actual damages.

Finally, it is important to note that both *Langer* and *Kelly* were authored before the Supreme Court's seminal holding in *Trans Union* in June 2021. Prior to *Trans Union*, a "material risk of harm" may have been sufficient for standing. *Compare Kelly*, 2021 WL 518434 at *8. That is no longer enough. Thus, the Supreme Court's example of a reckless driver who causes a *risk* of harm to another, but that harm does not materialize. *TransUnion*, 141 S. Ct. at 2211.

In sum, it was, respectfully, clear error for the Court to overlook that Plaintiffs in their class complaint did not allege the concrete harm and downstream consequences that are now necessary to establish standing under Article III. In sum, neither party has established the requisite standing to proceed in federal court. The Court should reconsider its May 18, 2023 ruling and remand this matter to state court for lack of subject matter jurisdiction.

Respectfully submitted:

Date: <u>5/25/2023</u>

<u>*/s/ Cary L. Flitter*</u>
CARY L. FLITTER
ANDREW M. MILZ
JODY T. LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(P) (610) 822-0782
(F) (610) 667-0552
Email: cflitter@consumerslaw.com
**Attorney for Plaintiffs and the Putative Class**

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed on May 25, 2023 through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: 5/25/2023                                            */s/ Cary L. Flitter*
                                                                             CARY L. FLITTER